

FILED
2018 Jul-12  AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMIE CROWE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:18-cv-00846-HNJ** |
| **CARMAX AUTO SUPERSTORES,** | ) | |
| **INC.; EXETER FINANCE;** | ) | |
| **ALLSTAR RECOVERY, LLC;** | ) | |
| **DEL MAR RECOVERY** | ) | |
| **SOLUTIONS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS AND MEMORANDUM IN SUPPORT THEREOF

**COMES NOW** Defendants CarMax Auto Superstores, Inc. ("CarMax") and Del Mar Recovery Solutions, LLC ("Del Mar") (collectively, the "Defendants"), by and through their undersigned counsel, and pursuant to Sections 2, 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, hereby move this honorable Court for an order compelling arbitration of the claims asserted by Plaintiff Jamie Crowe ("Crowe") in this action and dismissing all claims against these two Defendants. In support of this motion, Defendants state as follows:

## I. FACTUAL BACKGROUND

On March 3, 2018, Crowe and Timothy Chad Abernathy purchased a 2014 Chevrolet Captiva Sport (the "Vehicle"), from CarMax Auto Superstores, Inc. in

Huntsville, Alabama. (*See* Ex. A, Declaration of Mary Amos ¶ 7) ("Amos Decl."). In connection with the purchase, Crowe signed, among other documents, a Used Vehicle Bill of Sale ("Bill of Sale") and a Retail Installment Contract ("RIC"), both of which included an arbitration provision (collectively, the "Arbitration Provisions"). (*See* Bill of Sale, attached to Amos Decl. as Exhibit 1; RIC, attached to Amos Decl. as Exhibit 2.)  By signing the Bill of Sale and the RIC, Crowe agreed to arbitrate all claims or disputes arising out of or relating to the Bill of Sale, the RIC, the Vehicle, and the collection or servicing of the Bill of Sale or RIC, including disputes based in tort, consumer rights, fraud, or other intentional tort claims. (*See* Bill of Sale, p. 2; RIC, p. 3.)

The Arbitration Provisions, which Crowe signed, included on page 3 of the RIC and pages 2-3 of the Bill of Sale, state as follows:

## ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to 'we,' 'us' and 'our' mean the Seller, including Its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.

**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

31976500 v1

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
- **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

(RIC, p. 3.)[1]  The bottom of the RIC's Arbitration Provision states, "By initialing below you represent that you have read and agree to all provisions on all pages."

---

[1] The language in the Arbitration Provision in the Bill of Sale is identical to the language in the RIC's Arbitration Provision with the exception that the Bill of Sale defines "claim" as follows:

> A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this sale and/or this Contract or the Vehicle and related goods and services that are the subject of the purchase and this Contract or the collection or servicing of this Contract, including but not limited to:

(Bill of Sale, pp. 2-3.) This slight distinction in defining "claim" has no bearing on the merits of this Motion.

31976500 v1

(*Id.*) Additionally, the signature portion on page 1 of the Bill of Sale states, "By executing this Contract, Buyer (and Co-Buyer, if applicable) acknowledges reading the entire Contract (three pages), **including the Arbitration Provision.**" (Bill of Sale, p. 3.)  (emphasis added). Crowe signed both documents. (Bill of Sale, p. 1; RIC, p. 3.)

Del Mar received an assignment from CarMax to repossess the Vehicle. (*See* Amos Decl. ¶ 9; Exhibit B, Declaration of Alethea Naumann, ¶ 5 ("Del Mar Decl.")). Thereafter, Del Mar assigned the repossession to Allstar Recovery, LLC, who subsequently repossessed the Vehicle on or about April 12, 2018. (Del Mar Decl. ¶ 6.)

On June 1, 2018, Crowe filed a Complaint in the United States District Court for the Northern District of Alabama against Defendants and alleges that Del Mar was CarMax's agent. *See* Compl. ¶ 55 ("Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy."). Against CarMax, Crowe asserts claims for negligence, wantonness, conversion, negligent training and supervision, reckless and wanton training and supervision, violation of the U.C.C., breach of contract, and trespass. Against Del Mar, Crowe asserts claims for negligence, wantonness, conversion, negligent training and

supervision, reckless and wanton training and supervision, violation of the FDCPA, and trespass. Because these claims are subject to the Arbitration Provisions, Defendants move to compel arbitration in this matter.

## II. ARGUMENT

Under the facts set forth above, federal and state law mandates enforcement of the Arbitration Provision. For the following reasons, Crowe's claims against Defendants must be submitted to arbitration.

### A. ARBITRATION AGREEMENTS ARE PRESUMPTIVELY VALID.

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA "to ensure judicial enforcement of privately made agreements to arbitrate," and "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995) (same). Through its passage of the FAA, Congress placed arbitration agreements "upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). While legislators were aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." *Dean Witter Reynolds Inc.,*

470 U.S. at 220.

"[G]eneralized attacks on arbitration," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989). Instead, Congress, through its passage of the FAA, and the Supreme Court, through its interpretation of the Act, have together created a strong federal policy favoring the enforcement of arbitration agreements.  Indeed, these policies are so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). It is against this backdrop of a strong federal policy of encouraging arbitration that the Court must evaluate the merits of Defendants' motion.

**B.    THE    PREREQUISITES    UNDER    THE    FAA    FOR   ENFORCEMENT OF ARBITRATION AGREEMENTS ARE   SATISFIED.**

An arbitration agreement is specifically enforceable under the FAA if the following three requirements are met: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause.  9 U.S.C. § 2.  Each of these elements is clearly satisfied in this case. Additionally, as analyzed at the end of this section, any question concerning the scope of an arbitration agreement is for the arbitrator, not a court, to decide.

### 1.    The parties' Arbitration Provisions are in writing.

Here, the subject Arbitration Provisions are in writing and signed by Crowe. (*See* Bill of Sale, p. 1-3; RIC, p. 3.) Thus, the first prerequisite to enforcement of the Arbitration Provision is undoubtedly satisfied here.  *See* 9 U.S.C. § 2; *see also Freeman v. Sterling Jewelers, Inc.*, No. 1:08-cv-154, 2008 WL 3890498, at \*3 (M.D. Ala. 2008) (holding that, to satisfy the FAA's written agreement requirement, "[a]ll that is required is that the arbitration provision be in writing") (citation omitted).

### 2.    The parties' transaction involved interstate commerce.

The parties' transaction affects interstate commerce, thus satisfying the second prerequisite to enforcement of their Arbitration Provision. First and foremost, the parties have already agreed that the Federal Arbitration Act applies to

31976500 v1

any claim between the parties: "This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law." (*See* Bill of Sale, p. 3; RIC, p. 3.) As the Supreme Court has noted, courts "must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). Thus, when a contract expressly provides that the FAA controls, courts must enforce that stipulation and apply the FAA to the arbitration agreement contained in the contract. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478-79 (1989) (upholding choice of California law to govern arbitration although interstate commerce was involved because applying federal law would have forced parties to arbitrate in manner contrary to their agreement). Because the Arbitration Provisions here expressly provide that the FAA controls, the second prerequisite to its enforcement is satisfied on this basis alone.

Second, the FAA provides that "a contract evidencing a transaction **involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). The phrase "involving commerce" is to be given a "broad interpretation." *Allied Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 275

8

(1995). The term "involving commerce" in the FAA has been interpreted as the functional equivalent of the more familiar term "affecting commerce" and "encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied Bruce Terminix Co.*, 513 U.S. at 273)).

It is clear that the parties' underlying transaction here "involves" interstate commerce as required by the FAA.  It is beyond dispute that the delivery, transfer, or movement of goods, services, or other articles of commerce "across state lines . . . has long been recognized as a form of 'commerce.'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 573 (1997); s*ee also Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36 (1980); *Gibbons v. Ogden,* 22 U.S. 1, 194 (1824). Moreover, it is similarly well-settled that the sale of automobiles affects interstate commerce.  *See*, *e.g.*, *Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas*, 891 So. 2d 287, 292 (Ala. 2004) ("This Court has previously recognized that the purchase of a used automobile from an automobile dealer was a transaction that involved interstate commerce."); *see also United States v. Evans*, 272 F.3d 1069, 1080 (8th Cir. 2001) (noting that "the transaction—the purchase of an automobile from a commercial used car dealer—is sufficient, by itself, to have an effect on interstate commerce").  As such, this Court must conclude that the subject transaction affects interstate commerce.

The parties' transaction here unquestionably involved and/or affected interstate commerce based on the alleged sale of the vehicle at issue. *See Wood v. Cooper Chevrolet, Inc.*, 102 F. Supp. 2d 1345, 1348 (N.D. Ala. 2000) (finding that a transaction involving automobile seller involved interstate commerce where the "automobile came from out of state, [and] is driven on interstate highways"). CarMax is a Virginia corporation with its headquarters in Richmond, Virginia. (Amos Decl. ¶ 6.) The Vehicle, in contrast, was purchased by Crowe, an Alabama citizen. (*See* Bill of Sale; RIC.) Thus, the origination and servicing operations, including the activity involved with Crowe's Vehicle, necessarily involved interstate commerce. (Amos Decl. ¶ 6. Bill of Sale; RIC.)

Under the FAA, "parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Scis.*, 489 U.S. at 479. Parties to a contract are therefore free to specify whether their agreement to arbitrate will be governed by the FAA or state law. *See id.* As such, whether by the Parties' agreed-upon choice that the FAA shall apply, or by the fact that their transaction involves interstate commerce, there can be no doubt that the FAA applies to this matter. The second prerequisite to enforcement of the parties' Arbitration Provisions is therefore met.

### 3. The broad language in the Arbitration Provisions cover the claims in this action.

Finally, the parties' Arbitration Provisions are unquestionably broad enough in scope to encompass Crowe's claims. When determining the scope of an arbitration provision, the court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provisions. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2nd Cir. 1987); *In re Tirex Int'l, Inc.*, 395 B.R. 182, 194 (Bankr. S.D. Fla. 2008) ("In assessing whether a dispute falls within the scope of an arbitration clause, the court's focus 'is on the "factual allegations in the complaint rather than the legal causes of action asserted."'" (quoting *Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 868 (D.N.J. 1992))).  Additionally, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs.,*

31976500 v1

*Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United*

*Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)).

As previously noted, the parties' Arbitration Provisions are broadly worded

and unquestionably broad enough in scope to encompass the claims and allegations

in this action. In pertinent part, the Arbitration Provision in the RIC provides:

> **a. What Claims are Covered.** A "Claim" is **any claim, dispute or controversy** between you and us that in any way **arises from or relates to this consumer credit sale**, the purchase you are financing by way of this Contract, **the Vehicle** and related goods and services that are the subject of the purchase and this Contract, or the **collection or servicing of this Contract** . . . .

(RIC, p. 3 (emphasis added).)   Similarly, the Arbitration Provision in the Bill of

Sale provides:

> **a. What Claims are Covered.** A "Claim" is **any claim, dispute or controversy** between you and us that in any way **arises from or relates to this sale and/or this Contract or the Vehicle** and related goods and services that are the subject of the purchase and this Contract or the **collection or servicing of this Contract** . . . ."

(Bill of Sale, p. 2.) The Arbitration Provisions broadly cover, among other things,

any claim or dispute arising from or relating to Crowe's credit application, the

RIC, the Bill of Sale or the "collection or servicing of" the RIC or Bill of Sale.

Additionally, the Arbitration Provisions expressly apply not only to the original

contracting parties, but also to any agent of CarMax such as Del Mar is alleged to

12

be. *See* Bill of Sale, p. 2; RIC, p. 3) (encompassing "agents" within any reference to "we," "us," or "our").

Crowe's claims against Defendants in this matter arise out of the repossession of the Vehicle. Specifically, Crowe alleges that CarMax and Del Mar are liable for illegally repossessing the Vehicle and damaging her property. (*See* Compl.)   Based on these allegations, Crowe has brought numerous state and federal claims against Defendants. **These claims fall squarely within the broad scope of the Arbitration Provisions.[2]**   Crowe certainly cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.,* 475 U.S. at 650. Accordingly, Crowe's claims against Defendants must be arbitrated.

### 4.   The scope of the Arbitration Provisions is for the Arbitrator to decide.

Finally, the Arbitration Provisions makes clear that the question of arbitrability is itself subject to arbitration, as the agreement incorporates the rules of the American Arbitration Association ("AAA") or JAMS, which require the arbitrator to decide the issue of arbitrability of claims. (*See* Bill of Sale, pp. 2-3;

---

[2] Additionally, Crowe asserts a breach of contract claim against CarMax. Crowe states that CarMax was "obligated to perform certain duties under the financing agreement related to the Vehicle." *See* Compl. ¶ 50. By alleging breach of contract, Crowe has acknowledged the validity of the RIC and the arbitration provision contained therein. Thus, Crowe's breach of contract claim falls within the scope of the RIC's arbitration provision. *See* RIC, p. 3 (requiring arbitration on any claim relating to "this Contract"); *see also Latifi v. Sousa*, No. CV95-H-2136-NE, 1996 WL 735260, at *3 (N.D. Ala. Dec. 23, 1996) (compelling arbitration on claims that "arise out of the contract").

RIC, p. 3) These types of Arbitration Provisions authorize the arbitrator, not a court, to decide issues of arbitrability based on the arbitration forum's governing arbitration rules, and have routinely been upheld by state and federal courts under the doctrine announced in *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995).  There, the Supreme Court explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."  *Id.* at 943 (citations omitted); *see also Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998) ("[T]he parties may choose to have arbitrators resolve even the question of arbitrability."), *overruled on other grounds by Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585 (2008). This principle flows inexorably "from the fact that arbitration is simply a matter of contract between the parties."  *First Options*, 514 U.S. at 943. Thus, the Court in *First Options* held that where parties clearly agree to arbitrate issues of arbitrability, such issues should be reserved for the arbitrator.  *See id.*

When parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, such as the arbitral forum's rules, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.  *See Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327 (11th Cir. 2005). In *Terminix*, the Eleventh Circuit Court of Appeals overturned a

14

district court's decision to deny a motion to compel arbitration based on the inclusion of remedial restrictions (i.e., punitive damages, treble damages, etc.) without the existence of a severability clause within the arbitration agreement. *Id.* at 1330-1331. The Eleventh Circuit found that the parties agreed that the arbitrator, not the court, would determine the question of arbitrability by providing that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association." *Id.* at 1332. The court held that the AAA rules, in turn, provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* The court concluded that by incorporating the AAA Rules into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid. *See id.*

Here, the Arbitration Provisions clearly state that any claim shall be resolved by binding arbitration in accordance with the AAA's rules or JAMS' rules. (*See* Bill of Sale, pp. 2-3; RIC, p. 3) According to AAA Rule R-14(a), "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See AAA Consumer*

31976500 v1

*Arbitration Rules*, www.adr.org, Rule R-14(a).[3] And according to JAMS Rule 11(b), "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See JAMS Comprehensive Arbitration Rules & Procedures*, www.jamsadr.com, Rule 11(b).[4] By stating that any arbitration must be conducted pursuant to AAA or JAMS rules, the Arbitration Provisions leave no doubt that the arbitrator alone has the power to rule on the arbitrability of Crowe's claims. *See Terminix Int'l*, 432 F.3d at 1332. Crowe cannot evade the consequences flowing from the incorporation of these rules into the Arbitration Provisions.

In sum, all of the prerequisites under the FAA for enforcement of arbitration agreements are satisfied in this case.  For these reasons, CarMax's and Del Mar's Motion to Compel Arbitration should be granted, and any issues relating to the arbitrability of Crowe's claims should be reserved for the arbitrator.

### C.     <u>Del Mar is entitled to compel Crowe's claims against it to arbitration according to the Arbitration Provisions.</u>

---

[3] A true and correct copy of AAA Rule R-14 is attached hereto as Exhibit C.

[4] A true and correct copy of JAMS Rule 11 is attached hereto as Exhibit D.

Del Mar is entitled to compel arbitration of Crowe's claims against it based on the plain language of the Arbitration Provisions. In this case, Del Mar received an assignment from CarMax to repossess Crowe's vehicle, which Del Mar subsequently assigned to Allstar Recovery for repossession. (Del Mar Decl. ¶¶ 5-6.) Against Del Mar, Crowe now brings claims for negligence, wantonness, conversion, negligent training and supervision, reckless and wanton training and supervision, violation of the FDCPA, and trespass. *See* Compl. Crowe also alleges that Del Mar was acting CarMax's agent. *See* Compl. ¶ 55.

A nonparty to an arbitration agreement may compel arbitration "if the relevant state contract law allows him to enforce the agreement" to arbitrate. *Lawson v. Life of the S. Inc. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (citation omitted). As a result, the "issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

As initial matter, the Arbitration Provisions clearly state that "references to 'we,' 'us,' and 'our' mean the Seller, including its respective subsidiaries, affiliates, **agents**, employees, and officers." (*See* Bill of Sale, p. 2; RIC, p. 3 (emphasis added).) Additionally, both Arbitration Provisions permit either "you or we" to choose arbitration, which means that alleged agents are permitted to choose

arbitration. Based on the plain language of the Arbitration Provisions, Del Mar, as CarMax's alleged agent, may compel Crowe to arbitration on this basis alone. *See Cartwright v. Maitland*, 30 So. 3d 405, 410 (Ala. 2009) (rejecting argument that nonsignatory could not compel arbitration because that "argument again neglects the plain language of the arbitration provision").

Additionally, Alabama law permits a nonsignatory to compel arbitration when the claims against the nonsignatory are "intimately founded in and intertwined with the underlying contract obligations." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375, 380 (Ala. 2006); *see also Auvil v. Johnson*, 806 So. 2d 343, 350 ("The doctrine of intertwining extends the benefits of an arbitration agreement to a nonsignatory only if the claims against him are intertwined with the claims against a signatory who is going to arbitration.").[5] The claims against Del Mar are similar to the claims compelled to arbitration by a nonsignatory party in *Service Corp. Int'l v. Fulmer*, in which the Court held as follows:

---

[5] The Supreme Court of Alabama has crafted one exception to this "intertwining" rule, which is that "unless the arbitration provision contains sufficiently broad language that indicates that the nonsignatory was contemplated as a party, we have repeatedly held that the nonsignatory lacks 'standing' to enforce the arbitration agreement." *Smith*, 934 So. 2d at 380. However, the Arbitration Provisions here explicitly include an agent such as Del Mar within its bounds. Both Arbitration Provisions state that "references to 'we,' 'us' and 'our' mean the Seller, including its respective subsidiaries, affiliates, [and] agents." Additionally, both Arbitration Provisions permit either "you or we" to choose arbitration, showing that agents were specifically contemplated as parties that could enforce arbitration. Thus, these Arbitration Provisions are "not so restrictive as to preclude arbitration by" Del Mar. *See ECS, Inc. v. Goff Group, Inc.*, 880 So. 2d 1140, 1147 (Ala. 2003) (quoting *Ex parte Stamey*, 776 So. 2d 85, 89 (Ala. 2000)).

> All of Fulmer's claims arise from the same set of facts. Virtually none of Fulmer's claims makes a distinction between the alleged bad acts of SCI (the parent corporation) and those of SCI–Alabama (its subsidiary); rather, the claims are asserted as if SCI and SCI–Alabama acted in concert. Because Fulmer's claims are sufficiently "intertwined," the only remaining question is whether the arbitration provision is "so restrictive as to preclude arbitration by" SCI.

883 So. 2d 621, 634 (Ala. 2003).

Here, all of the claims against Del Mar and CarMax arise from the same set of facts: the repossession of the Vehicle. Further, Crowe's claims do not make a distinction between claims against Del Mar and CarMax. Indeed, the majority of Crowe's claims are against all of the defendants. *See* Compl. Instead, "the claims are asserted as if [Del Mar] and [CarMax] acted in concert." *Fulmer*, 883 So. 2d at 634; *see also Locklear Auto. Group, Inc. v. Hubbard*, 2017 WL 4324852, at *16 (Ala. Sept. 29, 2017) (compelling claims against nonsignatory to arbitration because "plaintiffs' complaints make virtually no distinction between the bad acts of Locklear Group and those of Locklear CJD."). Accordingly, because the claims against Del Mar are intertwined with the claims against CarMax, Del Mar is entitled to compel Crowe's claims against it to arbitration. *See Locklear*, 2017 WL 4324852, at *16 (finding that the claims were intertwined because "[e]very claim the plaintiffs asserted against Locklear CJD they also asserted against Locklear Group, and those claims were asserted as if Locklear CJD and Locklear Group had

acted in concert, as if the latter was responsible for the acts of the former, and/or as if those persons who acted for one also acted for the other").

Whether because the Arbitration Provisions explicitly permit an alleged agent such as Del Mar to compel arbitration, or because claims against Del Mar are intertwined with the claims asserted against CarMax, Del Mar is entitled to compel Crowe's claims against it to arbitration.

### E.    Crowe's claims against CarMax and Del Mar must be dismissed.

Finally, this Court should not only compel the arbitration of Crowe's claims against Defendants, but it should also dismiss these claims.  Section 3 of the FAA addresses the procedure for handling cases where issues are referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

"Although 9 U.S.C. § 3 speaks in terms of requiring a stay in the circumstances noted, there is authority from district courts in [the Eleventh Circuit] and other circuit courts of appeals which clearly supports a dismissal of an action when, due to an order compelling arbitration, there are no substantive claims left

pending before the district court." *Halford v. Deer Valley Home Builders, Inc.*, No. 2:07-cv-180-ID-WO, 2007 WL 1229339, at *3 (M.D. Ala. Apr. 25, 2007) (citing 9 U.S.C. § 3; *Clayton v. Woodmen of World Life Ins. Soc.*, 981 F. Supp. 1447 (M.D. Ala. 1997)); *Gilchrist v. Citifinancial Servs., Inc.*, 2007 WL 177821 (M.D. Fla. 2007) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") Indeed, "dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy" where all claims are subject to arbitration. *Clayton* 981 F. Supp. at 1447 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423 (M.D. Ala. 1997)).

Plaintiff's complaint alleges various violations of state and federal law, all arising from the repossession of Crowe's vehicle and all falling within the broad definitions of the "claims" covered by the Arbitration Agreements, leaving no claims to be decided by this Court. For these reasons, if this Court enters an order compelling arbitration, which it should, this Court should dismiss this case in its entirety.

## III. <u>CONCLUSION</u>

As shown above, Crowe should be compelled to arbitrate her claims against CarMax and Del Mar, and these claims should be dismissed. There are valid,

written Arbitration Provisions, the transaction involved interstate commerce, and the Arbitration Provisions are unquestionably broad enough in scope to encompass the claims in this action against Defendants. Accordingly, Defendants respectfully request that this Court compel Crowe's claim against CarMax and Del Mar to arbitration and dismiss all claims against CarMax and Del Mar.

Respectfully submitted this 12th day of July, 2018.


/s/ R. Frank Springfield
R. Frank Springfield (SPR024)
Ryan S. Rummage (RUM007)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:    (205) 458-5100
fspringfield@burr.com
rrummage@burr.com

Attorneys for Defendants
CARMAX AUTO SUPERSTORES, INC. AND DEL
MAR RECOVERY SOLUTIONS, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document by

CM/ECF Notice of Electronic Filing on this the 12th day of July, 2018 to:

John C. Hubbard
John C. Hubbard LLC
P.O. Box 953
Birmingham, AL 35203
jch@jchubbardlaw.com

W. Whitney Seals
Pate & Cochrun LLP
PO Box 10448
Birmingham, AL 35202
whitney@cochrunseals.com

*Attorneys for Plaintiff*

*/s/ R. Frank Springfield*
OF COUNSEL